Good morning, Your Honors. May it please the Court, my name is Roxana Muro and I represent the petitioner, Hugo Martinez-Davalos. In this case, an immigration judge originally granted protection, deferral of removal under the Convention Against Torture to Mr. Martinez based on his credible testimony that he had been attacked in Mexico by two Mexican police officers. The Court further found that contrary condition evidence supported that he would be at risk for future torture. After the case was granted, the government appealed and the Board sustained the government's appeal, finding that the police officers were rogue police officers. So they engaged in improper fact-finding. By finding that they were rogue police officers, they conceived they were police officers, but they also state that because they were rogue, they were not acting with acquiescence because they were acting without the scope of their authority, therefore taking the case out of the ambit of the protection of the Convention Against Torture. We appealed to the Ninth Circuit. This Court granted an unopposed motion to remand. In that unopposed motion to remand, there were two orders. One, for the Board to apply a clearly erroneous standard of review to the immigration judge's factual findings. That means that we have to implicitly find that the judge's findings should be upheld unless they were clearly erroneous, unless you can, you know, come up with a different decision. So we submit that this Court found that the judge's findings of my client's credible testimony should be upheld unless they were clearly erroneous. Two, the Court also remanded for the Board to consider the country conditions evidence because there had been intervening case law, Tapia Madrigal. The Board doesn't answer those two questions. Instead, they remand the case back to the immigration judge. In that remand order, they say that the judge should determine whether the petitioner's credible testimony alone supports the finding that the two men who attacked Mr. Martinez were police officers. So again, the Board finds that they were police officers. When we go on remand back to the judge, there wasn't any additional testimony regarding the events that we relied on for protection of the Convention Against Torture. We did submit additional testimony by an expert witness, a professor from the University of San Diego, Victor Clark, who testified regarding the significant abuse in Mexico, testified regarding the police officers' conduct in Mexico, typical conduct, and generally supported the petitioner's testimony that the two men were police officers. The immigration judge then arrives at an opposite finding. Suddenly and inexplicably, the judge finds that the two men may not be police officers, were probably just criminals because the country conditions evidence show that there are deplorable conditions in Mexico, so because on some occasions the petitioner was robbed, they're most likely thieves. That was an error. We contend that this court did not invite the immigration judge nor the Board of Immigration Appeals to revisit the facts. This court remanded for the Board to apply a clearly erroneous standard of review, and it remanded for country condition evidence to be re-evaluated in light of new case law. The board didn't do that. It remands, and then the judge makes this opposite finding. So we are requesting a remand again because the board has to do, has to follow the law. They have to follow what this court ordered. If we don't, then we're going to encourage immigration judges and the BIA to just go back and forth. Is there anything in the record that explains? This is the part that I, well, there's several parts of this case that I think are troubling, but one of them is, is there anything in the record that explains that after the remand to the IJ, and the, what's his, Martinez's expert testimony testified in his favor and all the other evidence was in his favor for why the immigration judge came out the other way? There isn't anything that explains. I mean, is there anything that the immigration judge says that points to this? I mean, the immigration judge in the 2014, I'm sorry, 2015, November 2014 decision simply points, he finds the, he ratified, I mean, I think it's, I think that the previous testimony was ratified by the judge. Again, incredible again. He says it again. The petitioner is credible. And then he finds that because the country condition evidence show that there's a lot of violence in Mexico and that there's extortion, robberies, that the country conditions evidence supported that the two men may have been just thieves and not police officers. He doesn't explain why he departed from his original finding. It's an abuse of, it's an abuse of discretion. It's not supported by the facts. And so when he found that they were police officers the first time, and we have additional corroborating testimony from an expert witness who corroborates, largely corroborates the petitioner's testimony, the judge comes at an opposite finding. That was wrong. And it's wrong because when this court grants the unopposed motion to remand and they tell the board, apply a clearly erroneous standard of review, we have to implicitly find that this court is also accepting the judge's decision unless it's not supported by substantial evidence. When the board remands in their remand order, they also say, does the petitioner's credible testimony alone support the finding that they were police officers? The judge does not thoroughly explain why all of a sudden the evidence doesn't compel that conclusion. Instead the judge points to country condition evidence to say that it really could have been one or the other. Professor Clark testified that in Mexicali in Baja California where the petitioner was residing for those 10 months, the police in that area are referred to as judiciales, that they drive white trucks, unmarked vehicles, and that their police officers wear plain clothes. That is what the petitioner testified to the first time, and he ratified it during the remanded hearing. There is nothing in the record that would support the judge's decision to come at an opposite finding. And that is troubling because, again, we do not believe that when the case was remanded that it was an invitation to relitigate the facts. It was simply to apply the proper standards of review, which were not done. And so we're requesting that this case be remanded again. Did the IJ apply the correct legal standard? Like on page 12, he says the bail threat the respondent perceived does not rise to the conduct constituting torture. But that's not the standard, right? For cat relief, it's more likely than not that he would be tortured? Correct. So is that a further basis for a possible remand? Yes, Your Honor. That is a further basis for another remand. And quite frankly, because he doesn't necessarily evaluate the torture on appeal, so the board doesn't either because once they find that there weren't public officials and there was no acquiescence, then they don't get into evaluating the likelihood of torture either. And in fact, opposing counsel notes in a footnote that if there is a remand, the court should consider the likelihood of torture under the proper standard. Your Honor, I see I'm out of time, and I'd like to reserve two minutes for rebuttal. You're not really out of time. I'm drawing caution a bit. Yes. Let Judge Reinhart decide. Well, you have one minute left, but we'll give you two. Thank you. Thank you. Good morning. May it please the Court, Stephen Nogueiro appearing on behalf of the Attorney General. Substantial evidence supports the agency's determination that Mr. Martinez failed to establish his eligibility for deferral of removal because the record does not compel the conclusion that it is more likely than not that he will be tortured in Mexico. First, the record does not compel the conclusion that Mr. Martinez's three brief encounters with the two men in Mexicali amounted to torture. Torture is an extreme form of cruel or unusual inhuman treatment causing severe pain or suffering and does not include lesser forms of cruel, inhuman, or degrading treatment. Here, Mr. Martinez acknowledged that he was not physically harmed during any of the three incidents, and there's no evidence that he suffered severe, prolonged mental pain or suffering sufficient to constitute torture. Second, the record does not compel the conclusion that the two men in Mexicali were, in fact, police officers. Mr. Martinez testified that the men were in a white pickup truck, but it's reasonable to assume Why did it compel it the first time? I'm sorry, Your Honor? Why did it reach that conclusion the first time? In his first opinion, Your Honor, the immigration judge concluded that the three incidents amounted to torture. On appeal to the Board, obviously, the Board vacated that decision because Your Honor, I was asking about the police officers being police officers. It appears that the immigration judge initially, as Mr. Martinez notes, the immigration judge found Mr. Martinez to offer credible testimony, and based on that testimony alone, took him at his word that the individual, that he thought the two men were police officers and that they, therefore, were police officers. But the second time, the immigration judge also found him credible, and why shouldn't he have taken that same testimony as true again and concluded that it was more likely than not he would be subject to torture by those people? Yes, Your Honor. In terms of what happened on remand, it appears that Mr. Martinez is arguing that on remand from this court, the remand was somehow limited in scope, but if the court were to look at the No, no, no. I'm just saying That's not what I was raising. So that's a different argument. I was saying, same testimony. So he's still credible. He's still testifying to the same thing. He brings in an expert that corroborates this, and the IJ comes to a contrary conclusion. That's hard to understand. Yes, Your Honor. It would have been helpful if the immigration judge There is no explanation in the immigration judge. Doesn't it sound a little arbitrary, as in abuse of discretion to do that? I don't think it's arbitrary, Your Honor. I think here the board on remand specifically invited the immigration judge to reconsider all of the evidence. Look at all of the evidence again. It kind of smells like the BIA said, we didn't like your result. Look at all the same evidence again and come out the other way. Well, again, Your Honor, the board invited the immigration judge to reconsider all of the evidence, which the immigration judge did, and in a thorough written opinion, the immigration judge, after reviewing all of that evidence. You can only reverse the factual finding for clear error, right? That's correct, Your Honor. So can the board avoid saying, well, we don't find a clear error, but we'd like you to do it over again, see if you can reach a different result? Well, that's not technically what happened here. Initially, the board vacated. I mean, that's the way you described it. Initially, the board vacated the immigration judge's decision, which was then petitioned to this court, and then the government voluntarily moved to remand the case based on this court's subsequent decision in Madrigal. And on remand to the board, the board said, okay, now that we have this case and additional evidence, we want to send it all back down to the immigration judge for consideration of all of the evidence. And when the immigration judge considered all of that evidence, the immigration judge reached a different conclusion the second time around, and admittedly, Judge Wardlaw, the immigration judge could have been clearer in terms of why they reached a different result. So that being the case counsel, and I understand you're not the IJ, you're not the one who kind of gave us apples and then oranges, but why not send it back to the IJ to explain how apples turned into oranges? Well, here, Your Honor, ultimately this court is reviewing whether or not the record compels the conclusion that it's more likely than not that Mr. Martinez will be tortured in Mexico. And here, the record simply doesn't compel that conclusion. Well, it did the first time, and then the second time, the same record enhanced didn't. I don't see why we would be precluded from asking the immigration judge for an explanation. I mean, it almost makes it hard to review. It's the same evidence, you know? It just... Well, again, Your Honor, in terms of determining whether or not the likelihood of Mr. Martinez is likely to be tortured in the future, the agency is to consider all the relevant evidence. And as the regulations explain, that includes past incidents of torture, the alien's ability to relocate within the country, gross, flagrant, or mass violations of human rights, and other relevant country conditions evidence. And here, looking at the totality of that evidence, putting aside this waffling or change in terms of whether or not these individuals were police officers, the record doesn't compel the conclusion that it's more likely than not, even if these were, in fact, police officers, that it's more likely than not that Mr. Martinez will be tortured in Mexico, given that the three incidents of encounters that he had with these two individuals didn't rise to the level of torture, and his generalized country conditions evidence... To support your argument that it doesn't rise to the level of torture, among other things, at page 32, your brief... I don't know if you wrote this brief, but your brief says that there is no evidence at all of severe anxiety, insomnia, nightmares, or other symptoms of mental distress. But Martinez testified that he became so frightened for his life that he stopped going to work. He avoided leaving the house. He eventually turned himself into the border to escape Mexico, the border patrol, to escape Mexico. In addition, the record demonstrates that he suffers from bipolar disorder and adjustment disorder, and has attempted to commit suicide three times. I don't understand how you could represent what you did in this brief based on this record. Well, there's no evidence that the bipolar disorder or any of those other conditions were precipitated by these three encounters, Your Honor. And, again, the severe emotional pain or suffering has to be in connection with the mistreatment. It seems like it was enhanced by it. I mean, it got worse and worse and worse to the point where he's almost afraid... I mean, he's afraid to be in Mexico. He's also afraid to come back here, except that the ATF... Do you dispute that the ATF agent invited him to come back because that's the only way he could be protected? Mr. Martinez testified that he contacted an ATF agent, Brian Briggs, twice after the second and third encounters, and that he also contacted another ATF agent, Agent Kwan, after the third encounter, but there's no evidence substantiating that, but he did testify that. But you're saying he testified to that... Well, where does it need anything substantiating it? If you had agents that he named who he said that, nobody denied it. That's true, Your Honor. I guess, and the final thing that I find troubling about this case is the fact that this is someone who actually worked as a confidential informant for our country for many years and helped to prosecute over a dozen criminal defendants, and yet... And he's deemed credible that he's facing torture in Mexico, and our government is not doing anything to help him? Well, actually, here, Your Honor, Mr. Martinez initially fled to Mexico because he was afraid... He didn't want to testify in another case in California, and that's when these three initial encounters occurred. Because he was afraid for his life, because as a cooperating witness, which are... You know, we now have seen lots of incidences of that happening. And so he ultimately went to Mexico when these three brief encounters with the two men in Mexicali occurred, at which point he decided he wanted to come back to the United States, which he did, and during the course of the initial removal proceedings, he was eventually removed to Mexico for another... He was actually removed to Mexico in 2013, where he remained unharmed for seven months, which somewhat diminishes his claim that it's more likely than not that he would be tortured there, Your Honor. If the court has no further questions, the government will rest on its brief. Thank you. Thank you. Thank you. You really have a minute. If you feel you need the second minute, we'll give it to you. Well, Your Honor, then we submit to the court. Thank you. Thank you, Your Honor. The case is argued.
judges: Reinhardt, Wardlaw, Owens